# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **Board of Trustees of the Public** | ) | **No. 04-CV-12378-RCL** |
| **School Teachers' Pension and** | ) | |
| **Retirement Fund of Chicago** | ) | |
|    **Appellant-Creditor** | ) | **On appeal from the Bankruptcy** |
| | ) | **(Ch. 7) Court** |
| | ) | **Case No. 03-14530-JNF** |
| **v.** | ) | **Hon. Joan N. Feeney,  presiding** |
| | ) | |
| **Phillip W. Hyde** | ) | |
|    **Appellee-Debtor** | ) | |

## BRIEF FOR THE APPELLEE

**Richard L. Blumenthal, Esq.**
**BBO #047150**
**SILVERMAN & KUDISCH, P.C.**
**1320 Centre, Suite 203**
**Newton Center, MA 02459**
**(617) 527-1150**
**Attorney for Appellee-Debtor**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                   **Page**

    Cases.................................................................................. iii
    Statutes............................................................................... iv-v
    Rules.................................................................................. v
    Articles............................................................................... v

**SUMMARY OF ARGUMENT**..................................................... 1

**ARGUMENT**............................................................................... 2

I.  THE BANKRUPTCY COURT DID NOT COMMIT AN ABUSE OF
    DISCRETION WHEN IT DETERMINED THAT "BAD FAITH"
    WAS NOT PRESENT ................................................................ 2

    A.  THIS COURT, AS AN APPELLATE COURT, SHOULD
        RULE ON THE NARROWEST POSSIBLE GROUNDS........ 2

    B.  THE ABUSE OF DISCRETION STANDARD...................... 3

    C.  THE BANKRUPTCY COURT DID NOT ABUSE
        ITS DISCRETION WHEN IT FOUND THAT THE CASE
        DID NOT INVOLVE BAD FAITH..................................... 3

    D.  THE BANKRUPTCY COURT DID NOT ABUSE ITS
        DISCRETION WITH RESPECT TO ITS SEPTEMBER 13,
        2004 ORAL RULINGS OR WRITTEN ORDER ................. 10

        (i)  THE HEARING ................................................. 10
        (ii)  THE COURT RULING......................................... 11

    E.  THE COURT DID NOT ERR BY  NOT ABROGATING THE
        DEBTOR'S RIGHTS................................................... 13

                                                                    **Page**

II.  EVEN IF THIS COURT DETERMINES THAT THE
     BANKRUPTCY COURT COMMITTED AN ABUSE
     OF DISCRETION WHEN IT DETERMINED THAT
     "BAD FAITH" WAS NOT PRESENT, "BAD FAITH"
     IS NOT A SUFFICIENT GROUND TO CAUSE A
     DISMISSAL OF THE CASE...................................................    14

         A. LACK OF GOOD FAITH IS NOT A GROUNDS FOR
            DISMISSAL OF A CHAPTER 7 PROCEEDING....................    14

III. THE FUND'S MOTION IS NOT TIMELY FILED...........................    17

IV.  DISMISSAL OF THE PETITION WOULD NOT
     FULFILL THE PURPOSE OF THE CODE BUT
     WOULD DISTORT THE PURPOSES OF THE CODE....................    17

CONCLUSION...........................................................................    18

ADDENDUM

         A.    MEMORANDUM ON TRUSTEE'S MOTION TO SETTLE
               A DEBTOR'S HOMESTEAD EXEMPTION (FEINER)............    1-8

         B.    ELLIOT J. FEINER DOCKET (Docket No. 02-12235-JNF) ...    9-23

         C.    11 U.S.C., § 707..............................................    24

APPENDIX

         A.    MEMORANDUM (dated and entered
               June 18, 2004) on Fund's Motion for
               Summary Judgment (Feeney, J.) ...............................1-19

         B.    ORDER granting DEBTOR'S MOTION TO AVOID LIEN
               (Feeney, J.) .........................................................    20-22

         C.    RESPONSE BY PHILLIP W. HYDE TO MOTION
               TO DISMISS UNDER § 707(a).................................    23-45

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page</u>

*In re Adell*, 310 B.R. 460
(Bankr. M.D. Fla. 2004)...................................………………………………    7

*Ashwander v. TVA*, 297 U.S. 288, 347 (1936)............…………….……………    2

*Burr v. Bank of Boston*, 160 F.3d 843 (1st Cir. 1998) …………..….…………    3

*In re Cabral*, 285 B.R. 653 (1st Cir. B.A.P. 2002)...............………………….    3, 12

*In re Carbaugh*, 299 B.R. 395 (Bankr. N.D. Tex. 2003) ...........…..…………    10, 12

*In re Carrozzella & Richardson*, 255 B.R.
267 (Bankr. D.Conn. 2000) …………………………………………………    6

*Dames & Moore v. Reagan*, 453 U.S. 654 (1981) ...............…..…………….    2

*Deglin v. Keobapha*, 279 B.R. 47 (Bankr. D. Conn. 2002) …………………    2, 12

*Dwyer v. Cempellin*, 424 Mass. 26, 30,
673 N.E.2d 863 (1996) ...................................………………………………    4

*In re Etcheverry*, 221 B.R. 524, 526 (Bankr. D.Colo., 1998) ....    14, 15

*In re Feiner*, Docket No. 02-1223-JNF......………………………….............    5, 11

*In re Fleury*, 294 B.R. 1, 6 (Bankr. D.
Mass. 2003), appeal dismissed, 306 B.R. 722
(1st Cir. BAP 2004) .................…………………………………….................    5, 6

*In re Green*, 934 F.2d 568, 571 (4th Cir. 1991) ……………………….............    16

*(Huckfeldt v. Huckfeldt) In re Huckfeldt*, 39 F.3d 829, 832 (1994) ...    15

*Industrial Insurance Services, Inc. v. Zick (In re Zick)*,
931 F.2d 1124 (6th Cir. 1991) ……………………………………………    13

*Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) ...........…………………..........    10

**Page**

*In re Khan*, 172 BR 613 (Bankr.D.Minn.1994) ............................................. ......9

*In re Landes*, 195 B.R. 855 (Bankr. E.D. Penn. 1996) ........................... 14, 16

*In re Latimer*, 82 B.R. 354 (Bankr.
E.D. Penn. 1988) ............................................................................... 14

*Matter of Little Creek Dev. Co.*, 779 F.2d, 1068
(5th Cir. 1986) ...................................................................... 9, 10, 12

*In re Marsico*, 2004 WL 97647 (Bankr. D. N.H.) ............................ 9, 10, 12, 17

*In re Marks*, 174 B.R. 37 (E.D. Pa. 1994) ..................................... 12

*Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (2000) ...................... 14, 15

*In re Pedigo*, 296 B.R. 485 (Bankr. S.D.Ind. 2003)  ............................. 15, 16

*Patriot Portfolio, LLC v. Weinstein
(In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999),
cert denied, 527 U.S. 1036 (1999) ............................................ 1

*Price v. Delaware State Police*, F.C.U.
(*In re Price*), 370 F.3d 362 (3rd Cir. 2004)  ................................. 3

*Tamecki v. Frank (In re Tamecki)*,
229 F.3d, 205 (3rd Cir. 2000)  ................................................ 2, 14

*In re Victoria Limited Partnership*, 187 B.R. 54
(Bankr. D. Mass 1995) ........................................................... 16

**Statutes**                                                          **Page**

11 U.S.C., § 341 ................................................................    3

11 U.S.C., § 521 ................................................................    3

11 U.S.C., § 522 ................................................................    1, 4

11 U.S.C., § 523 ................................................................    1, 5, 17

11 U.S.C., § 707 ................................................................    *passim*

11 U.S.C., § 727 ................................................................    1, 5, 17

11 U.S.C., § 1112 ................................................................    6

11 U.S.C., § 1129 ................................................................    14, 15

11 U.S.C., § 1225 ................................................................    15

11 U.S.C., § 1325 ................................................................    14, 15

Chapter 218 of the Acts of 2004 ................................................    4

M.G.L.c. 188 ................................................................    1, 4


**Rules**

Fed.R.Bankr.P.8009 ................................................................    1

**Articles**

Article: *THE GOOD FAITH FABLE OF 11 U.S.C., § 707(a);*
*HOW BANKRUPTCY COURTS HAVE INVENTED A GOOD*
*FAITH FILING REQUIREMENT FOR CHAPTER 7 DEBTORS*
13 Bank. Dev. J. 61................................................................    16

## SUMMARY OF ARGUMENT

The Board of Trustees of the Public School Teachers' Pension and Retirement Fund ("Fund") received a pre-petition attachment on the residence of Phillip W. Hyde ("Hyde" or "Debtor"), which the Bankruptcy Court avoided as the attachment impaired Hyde's homestead exemption. The Fund appealed the Bankruptcy Court's order avoiding the lien to this Court.[1] The Fund's present grievance is not with the Debtor, but with the fact that the Bankruptcy Code ("Code") only permits a debtor's exempt assets to be liable for certain specific debts set forth in 11 U.S.C., § 522(c), which type of debt the Fund does not hold. As a consequence of same, the First Circuit has determined that the "exception" portion of the Massachusetts homestead statute[2] has been preempted.[3] The Fund, having had its lien avoided, attempted to do, by indirection, what it could not do by direction, *i.e.*, it sought a dismissal of Debtor's case so that its pre-petition attachment would be reinstated. The Fund, having had its MOTION TO DISMISS UNDER 11 U.S.C., §707(a) denied by the Bankruptcy Court, seeks a determination from this Court that, *inter alia*, the Bankruptcy Court committed an abuse of discretion. It is not the Debtor who is employing "scorched earth" tactics of which the Fund complains (APPELLANT'S BRIEF at 44) but, rather, it is the Fund.[4, 5]

---

[1] That appeal has been dismissed by this Court pursuant to a joint stipulation.

[2] M.G.L.c. 188, § 1.

[3] *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999), cert denied, 527 U.S. 1036 (1999).

[4] The Fund failed to comply with Rule 8009 of the Federal Rules of Bankruptcy which require that the appellant "serve and file with the appellant's brief excerpts of the record as an appendix ... ." Hyde assumes that the Fund has filed, in relationship to this appeal, all the documents referenced in its DESIGNATION OF ITEMS TO BE INCLUDED IN RECORD ON APPEAL ("Designation"). Although the documents may have been filed with the Court, they were not served upon Hyde. Based upon same, Hyde will refer to the record in the same manner as the Fund, with the exception that Hyde has filed an Appendix pursuant to Bankruptcy Rule 8009(b)(9) which includes complete copies of certain of the items specified in the Fund's Designation. Documents which are included in the Hyde Appendix shall be referred to as "H.R." Documents contained in the Hyde Addendum shall be referred to as "H.A."

[5] Examples of the Fund's use of "scorched earth" tactics include, but are not limited to, the fact that although the Fund has received a judgment pursuant to 11 U.S.C., § 523, declaring that its debt is nondischargeable, it attempted to have all of the Debtor's claims to be determined nondischargeable pursuant to

Neither "lack of good faith" or "bad faith" is a specifically enumerated ground which would provide for dismissal pursuant to 11 U.S.C., § 707(a), nor is it an appropriate ground for dismissal of a proceeding pursuant to Chapter 7 of the Bankruptcy Code.[6]  Further, even if "bad faith" or "lack of good faith" was a ground for dismissal of a Chapter 7 proceeding, Hyde, in his chapter proceeding, neither lacked "good faith" nor has he exhibited "bad faith," and the Bankruptcy Court did not abuse its discretion when it found that "bad faith" was not present.

## ARGUMENT

### I.  THE BANKRUPTCY COURT DID NOT COMMIT AN ABUSE OF DISCRETION WHEN IT DETERMINED THAT "BAD FAITH" WAS NOT PRESENT

#### A.  THIS COURT, AS AN APPELLANT COURT, SHOULD RULE ON THE NARROWEST POSSIBLE GROUNDS

It is a rule of appellate review that a reviewing court will decide an appeal on the narrowest possible grounds.[7]  In the instant case, the narrowest possible grounds would be for this Court, in the first instance, to assume, *arguendo,* that "bad faith" is a ground for dismissal of a Chapter 7 bankruptcy proceeding and then to determine whether the Bankruptcy Court committed an abuse of discretion when it denied the Fund's MOTION TO DISMISS and found that the case did not involve "bad faith."

In *Deglin v. Keobapha, (In re Keobapha),* 279 B.R. 49 (Bankr. D.Conn. 2002) the Bankruptcy court adopted this bifurcated approach.  Before determining that the debtor did not exhibit any bad faith which would warrant the dismissal of the case, the Court for the purposes of that proceeding and that proceeding only "[a]ssumed that lack of good faith is subsumed within

---

11 U.S.C., § 727; its aggressive position seeking dismissal of the case when its debt has already been determined to be nondischargeable; and the Fund's pressing for attorney's fees in the adversary action when it had "submitted no factual or legal basis for diverging from the American Rule that litigants bear their own fees and expenses." *(Board of Trustees of the Public School Teachers' Pension and Retirement Fund of Chicago v. Phillip Hyde,* Adversary No. 03-1358, MEMORANDUM of June 18, 2004 at 18.) (R.32) (H.R. 1-19).

[6]*See, Tamecki v. Frank (In re Tamecki),* 229 F.3d 205, 206-207  (3rd Cir. 2000), (Rendell,  J. , dissenting).

[7] *Dames & Moore v. Reagan,* 453 U.S. 654 (1981); *Ashwander v. TVA,* 297 U.S. 288, 347 (1936).

2

the "for cause" provision of §707(a)."

## B. THE ABUSE OF DISCRETION STANDARD

The "abuse of discretion" standard, in relation to a motion to dismiss or convert "is reviewed for clear error."

> The clearly erroneous standard requires this Panel [reviewing court] to give great deference to the Bankruptcy Court as the trier of fact. Under this standard, a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *In re Cabral*, 285 B.R. 653 (1st Cir. B.A.P. 2002) (internal citations omitted).

## C. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT FOUND THAT THE CASE DID NOT INVOLVE BAD FAITH

In the proceeding, the Debtor timely filed all required schedules and statements; attended and testified at the meeting of creditors held pursuant to 11 U.S.C., § 341; paid all required fees; and timely filed his statement of intention.[8]

Notwithstanding the Debtor's compliance with the Code and the applicable Bankruptcy

---

[8]The Fund acknowledges that the Debtor did timely file a statement of intention. The Fund's concern appears to be that the filing is a non-filing due to the fact that the Statement of Intention does not comply with *Burr v. Bank of Boston*, 160 F.3d 843 (1st Cir. 1998). To the extent that there is an issue with a statement of intention, pursuant to 11 U.S.C., § 707(a)(3), the only party that can raise an issue with respect to a statement of intention as a ground to seek a dismissal of a proceeding is the United States Trustee. Although the Code does allow a court to dismiss a case if it determines a debtor failed to file a statement of intention, which the Debtor did file, the Code states that the Court may consider such issue, *"but only* on a motion by the United States trustee." (Emphasis added) Furthermore, the Statement of Intention, although signed by the Debtor, was drafted by counsel and neither of the two (2) institutional secured creditors have raised any issue with respect to the Statement of Intention. The Third Circuit has recently joined four (4) other circuits, each of which has determined that 11 U.S.C., § 521, is only a notice requirement and "does not limit a debtor's substantive retention options to the three stated therein." *Price v. Delaware State Police*, F.C.U. (*In re Price*), 370 F.3d 362 (3rd Cir. 2004). As such, of the nine (9) circuits that have considered this issue, five (5) circuits have held that it is not impermissible for the debtor to "retain and maintain." Even if the Bankruptcy Court determined that the Fund had standing to complain about the Statement of Intention, which the Debtor does not believe that the Fund has, dismissal would be far too harsh a sanction.

Rules, the Fund argues that the Debtor is acting in bad faith. The Fund would have this Court believe that every debtor who has ever committed a wrong, pre-petition, has, *per se*, acted in bad faith and, therefore, is not entitled to relief pursuant to the Code. An example of the conduct which the Fund alleges evidences the Debtor's bad faith, was the fact that the "Debtor claimed the $300,000 Massachusetts homestead exemption rather than the less general Federal exemption amount and then successfully moved to avoid the Fund's lien." (MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER § 707(a), page 20, hereinafter referred to as "Fund's Memorandum" (R.20))

The Fund argued that the Debtor should renounce exemptions that are available to debtors, which exemptions are provided by either federal or state law. *Id.* Debtors, obviously, have the right to employ exemptions. As Massachusetts is not an "opt-out state," a debtor has the option of either employing the exemptions set forth in 11 U.S.C., § 522(d) or exemptions which are provided pursuant to state, local or other non-bankruptcy federal law.[9] The Massachusetts Legislature has consistently manifested its support of the homestead exemption by regularly increasing the value of the homestead exemption.[10]  Debtors are entitled to take advantage of exemptions and it is to the debtor's advantage to maximize the exemption. The Massachusetts Supreme Judicial Court has pronounced that the homestead statute must be liberally construed in favor of homeowners. *Dwyer v. Cempellin*, 424 Mass. 26, 30, 673 N.E.2d 863 (1996). The purpose of a declaration of homestead "is to protect the home from the claims of creditors for the benefit of his or her family." *Id.* at 29-30. The homestead exemption also prevents a debtor and his family from becoming public charges. *Id.* at n. 7. It is not disputed that the Debtor lives in the residence with his minor son. (R.32)[11]

---

[9] 11 U.S.C., § 522(b).

[10] A very visible example of the Massachusetts Legislature's unyielding support of the homestead exemption is evidenced by the fact that on July 28, 2004, a bill was enacted, Chapter 218 of the Acts of 2004, increasing the protection afforded by a Massachusetts declaration of homestead filed pursuant to either M.G.L.c. 188, § 1 or § 1A, from $300,000 to $500,000. In situations where there are married homeowners and they both are eligible for a homestead pursuant to M.G.L.c. 188, § 1A, the debtors would be entitled to an exemption in the aggregate amount of $1,000,000.

[11] MEMORANDUM (R.32)(H.R. 3).

In at least one prior instance, the Bankruptcy Court, in the case of Elliot J. Feiner, Docket No. 02-12235-JNF, was confronted with the issue as to whether a debtor who had creditors either threatening or actually filing objections to discharge and who was ultimately indicted with mail fraud,[12] was entitled to the benefits of the homestead exemption. In the Feiner proceeding, creditors argued that the debtor's declaration of homestead was declared with a fraudulent purpose and was filed in bad faith, as the homestead exemption prevented the creditors from collecting their claims from the equity in the debtor's home. The Bankruptcy Court stated:

> The effect of the Massachusetts homestead exemption statute is to place the Debtor's equity in the Property beyond the reach of creditors. "The very purpose of the homestead law is to put the homestead beyond the reach of creditors [to the extent of the amount of monetary exemption]. The Debtor can hardly be faulted for having done what the law permits him to do." Thus, the Debtor's motivation to protect the equity in his home from the claims of creditors is a legitimate method of asset protection sanctioned by the statute and encouraged by Massachusetts Supreme Judicial Court, and cannot be considered "fraud" or "bad faith."

(internal citation omitted) MEMORANDUM ON TRUSTEES' MOTION TO SELL AND DEBTOR'S HOMESTEAD EXEMPTION (Feiner). (H.A. 1-8 , at 6)

The Fund cites, in support of its argument that the Debtor's actions must be reviewed against a "totality of circumstances test," *In re Fleury*, 294 B.R. 1, 6 (Bankr. D. Mass. 2003), appeal dismissed, 306 B.R. 722 (1st Cir. BAP 2004), which affirmed the Bankruptcy Court's dismissal of debtor's chapter 13 petition. As the Fund accurately stated, the Fleury petition was filed pursuant to Chapter 13 of the Code and not Chapter 7 of the Code. The distinctions between a proceeding under Chapter 13 and a proceeding under Chapter 7 are numerous. For example, a plan under Chapter 13 can only be confirmed if it is filed in "good faith." The Code does not cite "good faith" as a condition for receiving relief pursuant to Chapter 7. The Code does provide that in a Chapter 7 proceeding objections may be filed to the dischargeability of certain claims pursuant to 11 U.S.C., § 523, and various parties have the ability to file an objection to a debtor's discharge pursuant to 11 U.S.C., § 727. In a Chapter 13 proceeding, many

---

[12]United States District Court for the District of Massachusetts, Docket No. 04-10180-RWZ.

debts which would not be dischargeable in a Chapter 7 are dischargeable; secured debts can be modified; co-debtors can be protected; and arrearages cured. Furthermore, most Chapter 13 proceedings last between 36 and 60 months. Congress has clearly mandated that to take advantage of the benefits of a Chapter 13 proceeding good faith is required.

Not only are the benefits of Chapter 13 and Chapter 7 clearly distinguishable, the *Fleury* case is factually distinguishable from the case at bar. In *Fleury*, the Bankruptcy Court found, *inter alia*, that Fleury, an attorney who appeared *pro se* in her first case, received and expended over $350,000 in the year and a half between her two (2) filings; that Fleury had made two filings; and that Fleury had purposely failed to disclose her husband's claim in her initial petition. In *Fleury*, the debtor was attempting to avoid making any payments to her ex-husband, not by complying with the Code and the applicable rules of procedure, but by failing to list the debtor's ex-husband as a creditor in the first case. Fleury's actions in the bankruptcy proceedings were calculated and purposeful. Fleury was attempting to avoid making payments to her ex-husband. She, unlike Hyde, was not attempting to preserve her residence for herself and any minor child.[13]

In a fairly recent case, where a creditor moved to dismiss the case as a "bad faith" filing pursuant to Section 1112(b), Judge Paskay stated in response to the motion to dismiss:

> It is not unusual, as a matter of fact, it is quite common that debtors who are about to lose their homes seek refuge in the court of last resort, which is the Bankruptcy Court. While it is true that this happens as a general rule in Chapter 13 cases, there is nothing in the Bankruptcy Code, which prohibits an individual debtor who is eligible for relief under Chapter 11, to file a Petition for the same reason, even if that is the paramount and at times, the only reason to do so. It cannot be gainsaid that the threat of the loss of a home due to a pending mortgage foreclosure or actually [sic] threat of an immediate foreclosure sale, prompts the debtor to seek relief in the bankruptcy court. However, it is clear that basically there is no difference when a debtor files a Petition to save the home when it is threatened by loss by a judgment creditor who is aggressively pursuing an attempt to obtain satisfaction of a judgment by liquidating all assets of the debtor, including the family home, or when the loss of the home is at a foreclosure sale. The fact that the debtor is able to pay his debts as they mature and that the debtor is solvent is

---

[13]Further, even if the *Fleury* holding was on point, a bankruptcy appellate panel decision is not binding upon this Court. *See*, *In re Carrozzella & Richardson*, 255 B.R. 267 (Bankr. D.Conn. 2000).

of no consequence, especially when the debtor is rendered hopelessly insolvent by the entry of a money judgment in a very large amount. *It is well established that the mere fact that the bankruptcy Petition thwarts a judgment creditor in its attempt to enforce a valid legal right is no basis alone to deny the relief sought by the debtor provided that the debtor has an honest intention and a real need for relief and the ability to obtain relief under the provisions of Chapter 11 of the Code.* (Emphasis added) *In re Adell*, 310 B.R. 460 (Bankr. M.D. Fla. 2004)

Other conduct that the Fund argued constituted bad faith is that the Debtor, by filing the petition, "put the Fund to the task of suing him all over again by commencing an adversary action and moving for summary judgment in that proceeding" (Fund's Memorandum, at 20, R.19) and thereafter "did not even oppose the merits of the Fund's motion ... ." *Id.* As to the requirement of filing an adversary action, that is mandated by the Code and the applicable Bankruptcy Rules. As to the fact that the Debtor conceded to the entry of the judgment, is the Fund suggesting that the Debtor should have defended the merits of the action? Of course, there were issues on summary judgment and the Bankruptcy Court did issue a 19 page MEMORANDUM (Decision). (R.32) (H.R. 1-19)

As to the timely filed Statement of Intention which the Fund complains, the Fund not only understood the Statement of Intention but it attempts to use it, affirmatively, when it argues that the filed[14] Statement of Intention has the effect of "reducing this bankruptcy case to a dispute involving one primary creditor ... " *Id.*

The Fund also complained that the Debtor moved to avoid "*only* the Fund's lien." *Id.* at 21 (emphasis in original). What the Fund failed to state is that the Fund's lien was the only nonconsensual lien on the Debtor's property that was subject to avoidance.

The Fund also argues that the Debtor showed "bad faith" because the Debtor filed his petition for relief immediately prior to the time when a response was due to the Fund's summary judgment motion. The Fund does not explain why the filing of the petition prior to the response deadline is "bad faith." Even if the Fund held a judgment, the Fund would still have had to commence an action to have its debt declared nondischargeable, and, if the Fund were a judgment creditor, its judicial lien still would have been avoided.

---

[14]*See*, footnote 8, *supra.*

This is the only bankruptcy that the Debtor has ever filed. The remedy that the Code provides for the Fund is that the Fund may seek, and has sought, is to have its debt determined to be nondischargeable.

The Fund states in its Brief, "[y]et debtor refused to pay a single penny to the Fund and embarked on a mission to frustrate the Fund's recovery efforts." (Appellant's Brief at 42). **This allegation is blatantly false.**[15, 16] There were numerous offers made to the Fund including an offer contained in a letter dated October 30, 2002 wherein Debtor offered to: (a) provide the Fund with $25,000.00 via cashiers check; and, (b) agree to an entry of judgment and execution in the amount of $292,000.00 (calculated at $318,000 less the $25,000 payment, there is a $1,000.00 mathematical error here) with an agreement that the execution would accrue interest at the rate of 5%. Hyde further agreed that if the $292,000.00 plus interest was not paid within five (5) years that the Fund could proceed "to hold a sheriff sale and sell the property."[17]

Thereafter, Hyde by letter dated December 5, 2002, specifically informed the Fund that unless a resolution would occur that the Fund would "in all likelihood force Mr. Hyde into bankruptcy sooner or later, where he could contest the Board's claims, take advantage of the homestead declaration, take advantage of bankruptcy exemptions and benefits, and proceed with the benefit of the Board not being a secured creditor."[18]

---

[15]The Fund made the same statement in its MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER §707(a), p. 23 (R.19). The Fund later stated in the FUND'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER §707(a), at 5. (R.25), that it would have been clearer if the Fund stated "Debtor refused to pay the single penny to the Fund *under the Fund's terms*" (emphasis in original). For some reason, the Fund now resorts to its original inaccurate statement.

[16]The Fund's statement contained in its Brief (p. 43) that the "Trustee prevailed in its attack on Debtor's tax refund" is also inaccurate. The Trustee filed an objection (R.4), the Debtor filed a response (R.5), a stipulation was entered between the Debtor and the Trustee (R.7), a motion was filed to approve the stipulation (R.8), and the Court allowed the stipulation (R.9).

[17]A true copy of said letter, dated October 30, 2002, without its attachment, is annexed to the DEBTOR'S RESPONSE TO MOTION TO DISMISS UNDER §707(a) and marked Exhibit "A." (R.23) (H.R. 39-42).

[18]A true copy of said letter dated December 5, 2002 is annexed to the DEBTOR'S RESPONSE TO

The instant case is readily distinguishable from *In re Marsico*, 2004 WL 97647 (Bankr. D. N.H.). In *Marsico*, the Court found that the debtor "repeatedly claimed specious homestead exemptions" at 6. Hyde has not claimed any specious homestead exemptions. Marsico and his wife filed at least two (2) petitions. This is Hyde's only petition. Walter Marsico and his wife had active proceedings in two (2) districts wherein they each claimed the other's income and each claimed their homestead exemption for the other. Hyde does not have simultaneous open cases. In *Marsico*, the Court determined that the debtor "in concert with his Spouse filed his current bankruptcy petition in a systematic effort to shield *non-exempt* assets, the proceeds from the New Hampshire Property from his creditors" Id at 7. Hyde is not attempting to shield non-exempt assets only those assets which are exempt.

In *In re Khan*, 172 B.R. 613 (Bankr.D.Minn 1994), the Bankruptcy Court reluctantly determined that there was a "good faith" filing requirement, but stated:

> In passing on a motion for dismissal under §707(a), then the Bankruptcy Court should exclude any consideration that goes to the debtor's financial means. It cannot make judgmental pronouncements that the debtor really should be paying his or her debts rather than seeking refuge in liquidation. At 624.

> Of necessity, a "bad faith filing" would involve a manifest dishonesty towards a legal tribunal. That tribunal, of course, could be the forum bankruptcy court. At 625.

> *Pre- or post-filing actions in connection with the bankruptcy case that could support the finding would consist of systemic and deliberate misstatements or omissions on bankruptcy schedules; knowingly false testimony at a meeting of creditors, or at court hearings; and intentional acts to hinder the trustee in the administration of the estate and the investigation in connection with it. To taint the whole filing, there should be something more than isolated instances in lieu of such conduct.* A single such infraction, or even scattered ones, might merit one of the more limited sanctions, but they probably should not compel an instance of the sort of permeating animus that "bad faith" entails. *Id.* (emphasis added).

The *Khan* Court stated: "[d]ismissal, of course, cannot be automatic on the finding of any of these acts or conduct. Caution in dispensing the remedy of dismissal for "bad faith" is also

---

MOTION TO DISMISS UNDER §707(a) and marked Exhibit "B." (R.23) (H.R. 43-44).

prompted by the need noted earlier to maintain the balance of remedies in bankruptcy." At 626.

As stated in the *Matter of Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) (*Little Creek*), and as quoted by *In re Carbaugh*, 299 B.R. 395 (Bankr. N.D. Tex. 2003) "a finding of good faith "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and local financial realities ... and are based upon a conglomerate of factors rather than any single datum." *Little Creek* at 1072, *Carbaugh* at 399.

The Fund quotes *Marisco* for its observation that "bad faith" is somewhat like obscenity as a judge may say that, "I know it when I see it." *In re Marisco*, *4, quoting *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964).

The Fund alleges that the Bankruptcy Court "failed to "consider all the factors relative to the determination of Debtor's bad faith ... " At 44. There is absolutely no evidence to support this allegation. In fact, the Bankruptcy Court's MEMORANDUM (R.32, H.R. 1-19), in the section of the decision entitled "FACTS," pages 3 - 8, clearly shows that the Court was well aware and well acquainted with the facts of the case.[19] As stated by the Fund, determination of "bad faith" is done on an *ad hoc* basis. Also as set forth by the Fund, a court knows "bad faith" when it sees it. *Little Creek* and *Carbaugh* state that a determination of "good faith" depends upon the Bankruptcy Court's "on the spot evaluation."

## D. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WITH RESPECT TO ITS SEPTEMBER 13, 2004 ORAL RULING OR WRITTEN ORDER

### (i) THE HEARING

At the hearing on the matter, the Court stated:

I had an opportunity to review the memoranda filed by both sides. (ADD. 03)

---

[19] In fact, the Court noted that as the facts were not in dispute it "paraphrase[ed] portions of the plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment." (R. 1-19 at 3).

10

The Court further stated that counsel could add additional information if they chose. *Id.* The Fund, in response, stated that it did not "want to take up the Court's time if your Honor is satisfied with the briefs." *Id.*    Notwithstanding same, Fund did make two (2) additional points. *Id.*

The Bankruptcy Court had previously heard issues relating to the case. The Bankruptcy Court heard the MOTION OF DEBTOR TO AVOID LIEN PURSUANT TO 11 U.S.C., § 522(f) (R. 10) and received the Fund's 17 page opposition (R. 11). The Bankruptcy Court issued an order on same. (R.13) (H.R. 20-22)

The Court also heard the Fund's motion for summary judgment in the adversary action wherein the Fund sought to object to both the discharge of the Debtor's claim and the Debtor's discharge. The Court wrote an 19 page decision. (H.R. 1-19) (R.32). In the Bankruptcy Court's MEMORANDUM, the Court made very detailed findings and, in fact, adopted much of the Fund's statement of facts.

Te Bankruptcy Court also ruled on a similar legal issue in the Elliot J. Feiner case in its MEMORANDUM ON TRUSTEE'S MOTION TO SETTLE A DEBTOR'S HOMESTEAD EXEMPTION (H.A. 1-8) and the Court would have also considered these issues in the Feiner case in response to a motion requesting that the Court abstain or dismiss. (Feiner Docket Entry No. 88, H.A. 9-23, at 15). The Court denied that motion (Feiner Docket No. 102) (H.A. 9-23, at 17).

### (ii)   THE COURT'S RULING

The Court after hearing argument and having had reviewed the submissions[20] stated: "In any event even if there were [a good faith filing requirement] the present case does not involve bad faith. The moving party is simply showing that the Debtor has filed a Chapter 7 petition in

---

[20]The submissions included the Fund's MOTION TO DISMISS UNDER § 707(a) with Exhibits "G" through "M" (R. 18), Fund's MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER § 707(a) (R. 19), Fund's MOTION TO SUPPLEMENT MOTION TO DISMISS UNDER § 707(a) AND SUPPORTING MEMORANDUM, with Exhibit "N." (R. 20), DEBTOR'S RESPONSE TO MOTION TO DISMISS UNDER § 707(a) (R. 23), TRUSTEE'S RESPONSE TO FUND'S MOTION TO DISMISS UNDER § 707(a) (R. 24), and Fund's REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER § 707(a) (R. 25).

order to protect his exemption rights and real estate under Massachusetts law, and his strategy is quelled by his bad faith, and I therefore deny the motion to dismiss." (Add. 08-09)

The Bankruptcy Court made its on-the-spot evaluation and found there was no "bad faith." The Fund argues that "bad faith" is like obscenity and a judge knows it when he/she sees it. The Bankruptcy Court knew that "bad faith" was not present in the case.[21] The facts in the instant case are clearly not similar to the facts and circumstances where courts have found "bad faith" such as *Cabral* or *Marisco*.

Such a ruling is not unusual and is consistent with decisions of other courts. Even the courts that believe there is a "good faith" filing requirement often find that the moving party has not shown that the debtor did not have good faith in its filing. For example, in *Keobapha* the Court found that the debtor, like Hyde, did not: (1) manipulate his financial situation to reduce creditors to a single creditor in the months prior to the petition; (2) live a lavish lifestyle; (3) make a pre-petition transfer of assets. Hyde, like Keobapha, can "barely make ends meet" with his meager income and providing a home for his minor child.[22] Again, like Keobapha, the Debtor's petition was in response to a pending lawsuit but "that alone is not cause for dismissal under §707(a)." At 53.[23, 24]

---

[21]In the twelve (12) months ending June 30, 2004, there were 18,153 bankruptcy filings in Massachusetts. Assuming, for argument's sake, that Judge Feeney received 20% of same this would mean that in fiscal year ending June 30, 2004 she had in excess of 3,600 new cases on her docket. Again, only for argument's sake, and Hyde is cognizant that bankruptcy filings have increased over the years, as Judge Feeney has been sitting for approximately 12 years, as a ball park estimate, Judge Feeney has had on her docket in excess of 30,000 cases.

[22]Both of the Debtor's mortgagees have filed relief from the automatic stay to foreclose their respective mortgages. The Bankruptcy Court recognized that the Debtor's expenses exceed his income. (R.32, H.R. 3)

[23]There are many cases where courts have determined that there was a "good faith" filing requirement, but determined that there was an insufficient showing of lack of "good faith." *See e.g.*, *In re Marks*, 174 B.R. 37 (E.D. Pa. 1994). (Debtor who held an ERISA Pension Plan totaling in excess of $312,000.00, had an annual gross income in excess of $129,000.00 and who filed an order to avoid a judgment, part of which judgment included damages for intentional interference "met his burden of proving good faith." At 41.); *Little Creek* (Although the Bankruptcy Court and the District Court found that the bankruptcy proceeding was in "bad faith" as an effort to escape the necessity of posting a bond in the state court proceedings, the circuit court determined that that finding alone was insufficient to support a finding of "bad faith"); *Carbaugh* (Debtor, who was involved in a litigation with his former spouse and who filed his petition on the day that he became subject to a turnover

## E. THE COURT DID NOT ERR BY NOT ABROGATING
## THE DEBTOR'S RIGHTS

The Fund concedes that the Debtor does have statutory rights but argues in three (3) separate places in its APPELLANT'S BRIEF that the Bankruptcy Court erred by "according too much weight to Debtor's statutory rights" (p. 45); "placing too much weight on Debtor's statutory rights" (p. 49); and because the Court "focused solely on Debtor's statutory rights ... ." (p. 49)

The Bankruptcy Court found that Debtor's filing did not qualify as "bad faith." (Fund Addendum at 9). Although the Fund alleges that the Court failed to consider the circumstances, obviously that is inaccurate as the Court was well aware of the circumstances. In fact, the Court stated in its MEMORANDUM that it paraphrased portions of the Fund's Statement of Undisputed Material Facts in Support of Summary Judgment. (H.R. 1-19, at 3)[25]

In essence, the Fund is requesting that this Court rule that the Bankruptcy Court committed an abuse of discretion by refusing to abrogate the Debtor's rights, based upon what the Fund believes the Bankruptcy Code should state, as opposed to language that the

---

order and the possibility of being held in contempt by a state court judge, and who allegedly engaged in a series fraudulent transfers, filed his case in "good faith" and the creditor did not show "bad faith" sufficient to dismiss the case).

[24]Even in *Industrial Services, Inc. v. Zick (In re Zick)*, 31 F.2d 1124 (6th Cir. 1991), a case upon which the Fund relies, the Sixth Circuit Court of Appeals cautioned that "lack of good faith must be taken on *ad hoc* basis." The Court further stated that there was a three-pronged conjunctive test. For a case to be dismissed for bad faith, Debtor would have to have: (i) concealed or misrepresented assets and/or sources of income; (ii) had and continued to have excessive expenditures and live a lavish life-style; and (iii) attempted to avoid a large single debt based upon conduct akin to fraud, misconduct, or gross negligence. There was no finding that Hyde misrepresented assets or sources of income. There is absolutely no evidence to suggest that Hyde has excessive expenditures or lives a lavish lifestyle, and as Hyde did not dispute the dischargeability of the debt due the Fund, the Debtor is not attempting to avoid the debt. Hyde, unlike Zick, does not have gross business income in excess of $360,000.00; his non-debtor spouse has passed away and, therefore, cannot provide any additional income, and his personal property is worth substantially less than the $90,000.00 that Zick had, in 1989, when Zick filed his case. Hyde listed the aggregate value of his personal property at $13,010.37 (R. 18 at Exhibit). The Circuit Court also appears to question Zick's veracity as Zick had listed household furnishings as having a value of only $2,000.00 even though his residence was "in the affluent community of Bloomfield Hills." At 1129, n.7.

[25]The Fund did not request that the Bankruptcy Court issue findings of fact.

13

Bankruptcy Code actually contains, and that the test should be, as one court described it, "an amorphous gestalt devoid of reasoning and impenetrable to understanding."[26]

## II.   EVEN IF THIS COURT DETERMINES THAT THE BANKRUPTCY COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT DETERMINED THAT "BAD FAITH" WAS NOT PRESENT, "BAD FAITH" IS NOT A SUFFICIENT GROUND TO CAUSE A DISMISSAL OF THE CASE

### A.   LACK OF GOOD FAITH IS NOT A GROUNDS FOR DISMISSAL OF A CHAPTER 7 PROCEEDING

It is undisputed that neither the words "lack of good faith" nor "bad faith" are contained in 11 U.S.C., § 707(a).[27] If Congress had wanted to include either "bad faith" or the "lack of good faith" as a basis for dismissal of a Chapter 7 proceedings, it certainly had the ability to add that phrase. The phrase, "good faith," is contained in other sections of the Code, including 11 U.S.C., § 1129(3) and 11 U.S.C., § 1225(3), ("the plan has been proposed in good faith ...") and 11 U.S.C., § 1325(3) ("the plan has been proposed in good faith ..."). Surely, Congress who used the term "good faith" in at least three (3) separate Code sections relating to a debtor's actions, if it had wanted to include "bad faith" as a grounds for dismissal of a Chapter 7 proceeding, would have added such language.

The Fund acknowledges that the 9th Circuit, in *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (2000), determined that "bad faith," *per se*, is not a basis for dismissal under 11 U.S.C., § 707 (APPELLANT BRIEF at 30). Other courts have similarly found. In *In re Etcheverry*, 221 B.R. 524, 526 (Bankr. D.Colo., 1998), the court stated:

> In short this Court holds there is no "good faith" requirement contained in 11 U.S.C., § 707(a). Rather, this Court adopts and follows the reasoning of Chief Justice Scholl in his opinions in *In re Latimer*, 82 B.R. 354 (Bankr. E.D. Penn. 1988) and in *In re Landes*,

---

[26]*See*, page 16, *infra*.

[27]*Tamecki* (Rendell, J. dissenting) at 206-207.

195 B.R. 855 (Bankr. E.D. Penn. 1996)."[28]

The *Etcheverry* Court noted that "Congress had the opportunity to insert a "good faith" requirement into §,707(a) when it amended § 707(b) in 1986 ... but they did not do so." At 255-526. In *(Huckfeldt v. Huckfeldt) (In re Huckfeldt)*, 39 F.3d 829, 832 (1994), the 8th Circuit stated that "bad faith" is an improper basis for dismissal under §,707(a)." At 832.

*In re Pedigo*, 296 B.R. 485 (Bankr. S.D.Ind. 2003) succinctly stated the debtor's position:

**Bad Faith Does Not Constitute
"Cause" for Dismissal**

> Congress, when it so desires, knows how to require good faith in connection with a bankruptcy case, and that is by writing the requirement into the Code. *See* §§ 1129(a)(3), 1225(a)(3), 1325(a)(3). No such language appears in section 707. This is not an accidental omission, but rather is tied to the difference between a liquidation and a reorganization. It is not the role of bankruptcy courts to rewrite the Code. Congress, albeit with much difficulty, has taken on that task.

> Admittedly, the majority of courts would disagree and have, in fact, found that bad faith does constitute cause for dismissal under section 707(a). These decisions, however, cite to chapters 11, 12, and 13 cases, where good faith is written into the Code, for the analogy that good faith should be an implied requirement in all filings. While this Court agrees that a chapter 11 or 13 debtor must prove his or her payment plan in good faith in order for a court to confirm it, the policy reasons behind this requirement do not exist in the chapter 7 context. The reorganization chapters of the Code require an ongoing relationship between the debtor and his creditors. As such, the debtor must "approach its new relationship with the creditors in good faith." *Padilla*, 222 F.3d at 1192. Chapter 7 liquidation does not require an ongoing debtor-creditor relationship. A reorganizing debtor retains its assets while a liquidating debtor forfeits all his non-exempt assets.

The *Pedigo* Court further stated that dismissing a case pursuant to 707(a) "would violate

---

[28]The Fund argues that *Latimer* and *Landes* are no longer good law, but states that they have not been "expressly overrule[d]." (APPELLANT'S BRIEF at 33). Irrespective of whether *Latimer* or *Landes* have been overruled, even if they had not been overruled another circuit's lower court decisions or even the circuit court's decision is not binding upon a federal court in another circuit. Although a superior court may have rejected Judge Scholl's reasoning, there is no binding precedent which would require this Court not to consider the decisions' reasoning.