debtors would be entitled to an exemption in the aggregate amount
of $1,000,000.  Debtors are entitled to take advantage of
exemptions and it is to the debtor's advantage to maximize the
exemption.  The Supreme Judicial Court has pronounced that the
homestead statute must be liberally construed in favor of
homeowners.  Dwyer v. Cempellin, 424 Mass. 26, 30, 673 N.E.2d 863
(1996).  The purpose of a declaration of homestead "is to protect
the home from the claims of creditors for the benefit of his or
her family." Id. at 29-30.  The homestead exemption also prevents
a debtor and his family from becoming public charges. Id. at Note
7.  It is not disputed that the Debtor lives in the residence
with his minor son.

     This Court, in Elliot J. Feiner, Docket No. 02-1223-JNF, was
confronted with the issue as to whether a debtor who had
creditors either threatening or actually filing objections to
discharge and who was ultimately indicted with mail fraud, was
entitled to the benefits of the homestead exemption.  In Feiner,
creditors argued that the debtor's declaration of homestead was
declared with a fraudulent purpose and was filed in bad faith, as
the homestead exemption prevented the creditors from collecting
their claims from the equity in the debtor's home.  This Court in
its MEMORANDUM ON TRUSTEE'S MOTION TO SETTLE A DEBTOR'S HOMESTEAD
EXEMPTION stated:

          The effect of the Massachusetts homestead exemption
          statute is to place the Debtor's equity in the Property
          beyond the reach of creditors.  "The very purpose of
          the homestead law is to put the homestead beyond the
          reach of creditors [to the extent of the amount of
          monetary exemption].  The Debtors can hardly be faulted

                              4

26

> for having done what the law permits him to do." <u>In re Miller</u>, 113 B.R. 98, 104-05 (Bankr. D.Mass. 1990). Thus, the Debtor's motivation to protect the equity in his home from the claims of creditors is a legitimate method of asset protection sanctioned by the statue and encouraged by Massachusetts Supreme Judicial Court, and cannot be considered "fraud" or "bad faith." <u>See Id</u>. at 105 ... At 6.

The Fund cites, in support of its argument, <u>In re Fleury</u>, 294 B.R. 1, 6 (Bankr. D. Mass. 2003), appeal dismissed, 306 B.R. 722 (1st Cir. BAP 2004), which affirmed the Bankruptcy Court's dismissal of debtor's chapter 13 petition. As the Fund accurately stated, the <u>Fleury</u> petition was filed pursuant to Chapter 13 of the Code and not Chapter 7 of the Code. The distinctions between a proceeding under Chapter 13 and a proceeding under Chapter 7 are numerous. For example, a plan under Chapter 13 can only be confirmed if it is filed in "good faith." The Code does not cite "good faith" as a condition for receiving relief pursuant to Chapter 7. The Code does provide that in a Chapter 7 proceeding objections may be filed to the dischargeability of certain claims pursuant to 11 U.S.C., §523, and various parties have the ability to file an objection to a debtor's discharge pursuant to 11 U.S.C., §727. In a Chapter 13 proceeding, many debts which would not be dischargeable in a Chapter 7 are dischargeable; secured debts can be modified; co-debtors can be protected; and arrearages cured. Furthermore, most Chapter 13 proceedings last between 36 and 60 months. Congress has clearly mandated that to take advantage of the benefits of a Chapter 13 proceeding good faith is required.

Not only are the benefits of Chapter 13 and Chapter 7 clearly distinguishable, the <u>Fleury</u> case is factually distinguishable from the case at bar.  In <u>Fleury</u>, the Bankruptcy Court found, <u>inter alia</u>, that Fleury, an attorney who appeared <u>pro se</u> in her first case, received and expended over $350,000 in the year and a half between her two (2) filings; that Fleury had made two filings; and that Fleury had purposely failed to disclose her husband's claim in her initial petition.   In <u>Fleury</u>, the debtor was attempting to avoid making any payments to her ex-husband, not by complying with the Code and the applicable rules of procedure, but by failing to list the debtor's ex-husband as a creditor in the first case.  Fleury's actions in the bankruptcy proceedings were calculated and purposeful.  Fleury was attempting to avoid making payments to her ex-husband.  She, unlike Hyde, was not attempting to preserve her residence for herself and any minor child.[8]

In a recent case, where a creditor moved to dismiss the case as a "bad faith" filing pursuant to Section 1112(b), Judge Paskay stated in response to the motion to dismiss:

> It is not unusual, as a matter of fact, it is quite
> common that debtors who are about to lose their homes
> seek refuge in the court of last resort, which is the
> Bankruptcy Court.  While it is true that this happens
> as a general rule in Chapter 13 cases, there is nothing
> in the Bankruptcy Code, which prohibits an individual
> debtor who is eligible for relief under Chapter 11, to
> file a Petition for the same reason, even if that is

---

[8]    Further, even if the <u>Fleury</u> holding was on point, a bankruptcy appellate panel decision is not binding upon this Court.  <u>In re Carrozzella & Richardson</u>, 255 B.R. 267 (Bankr. D.Conn. 2000).

28

the paramount and at times, the only reason to do so. It cannot be gainsaid that the threat of the loss of a home due to a pending mortgage foreclosure or actually [sic] threat of an immediate foreclosure sale, prompts the debtor to seek relief in the bankruptcy court. However, it is clear that basically there is no difference when a debtor files a Petition to save the home when it is threatened by loss by a judgment creditor who is aggressively pursuing an attempt to obtain satisfaction of a judgment by liquidating all assets of the debtor, including the family home, or when the loss of the home is at a foreclosure sale. The fact that the debtor is able to pay his debts as they mature and that the debtor is solvent is of no consequence, especially when the debtor is rendered hopelessly insolvent by the entry of a money judgment in a very large amount.  <u>It is well established that the mere fact that the bankruptcy Petition thwarts a judgment creditor in its attempt to enforce a valid legal right is no basis alone to deny the relief sought by the debtor provided that the debtor has an honest intention and a real need for relief and the ability to obtain relief under the provisions of Chapter 11 of the Code</u>. (Emphasis added)  <u>In re Adell</u>, 310 B.R. 460 (Bankr. M.D. Fla. 2004)

Other examples which the Fund alleges constitute bad faith by the Debtor is that by filing the petition in bankruptcy he: "put the Fund to the task of suing him all over again by commencing an adversary action and moving for summary judgment in that proceeding" (Fund's Memorandum, at 20) and thereafter "did not even oppose the merits of the Fund's motion ... ." <u>Id</u>. As to the requirement of filing an adversary action, that is mandated by the Code and the applicable Bankruptcy Rules.  As to the fact that the Debtor conceded to the entry of the judgment, is the Fund suggesting that the Debtor should have defended the merits of the action?

As to the Statement of Intention which the Fund complains, the Fund not only understood the Statement of Intention but it

29

attempts to use it, affirmatively, when it argues that the Statement of Intention has the effect of "reducing this bankruptcy case to a dispute involving one primary creditor ... " Id.

The Fund also complains that the Debtor moved to avoid "only the Fund's lien." Id. at 21 (emphasis in original)  What the Fund does not state is that the Fund's lien was the only nonconsensual lien on the Debtor's property that was subject to avoidance.

The instant case is readily distinguishable from In re Marsico, 2004 WL 97647 (Bankr. D. N.H.).  In Marsico, the Court found that the debtor "repeatedly claimed specious homestead exemptions" at 6.  Hyde has not claimed any specious homestead exemptions.  Marsico and his wife filed at least two (2) petitions.  This is Hyde's only petition.  Walter Marsico and his wife had active proceedings in two (2) districts wherein they each claimed the other's income and each claimed their homestead exemption for the other.  Hyde does not have simultaneous open cases. In Marsico, the Court determined that the debtor "in concert with his Spouse filed his current bankruptcy petition in a systematic effort to shield non-exempt assets, the proceeds from the New Hampshire Property from his creditors" Id at 7.  Hyde is not attempting to shield non-exempt assets only those assets which are exempt.

B.    **EVEN IF THIS COURT DETERMINES THAT HYDE HAS EXHIBITED BAD FAITH, THAT IS NOT GROUNDS SUFFICIENT TO CAUSE A DISMISSAL OF THE CASE**

As acknowledged by the Fund, neither the words "lack of good faith" or "bad faith" are contained in 11 U.S.C., § 707(a). If Congress had wanted to include either "bad faith" or the "lack of good faith" as a basis for dismissal of a Chapter 7 proceedings, it certainly had the ability to add that phrase. The phrase, "good faith," is contained in other sections of the Code, including 11 U.S.C., § 1129(3) and 11 U.S.C., § 1225(3), ("the plan has been proposed in good faith ...") and 11 U.S.C., § 1325(3) ("the plan has been proposed in good faith ..."). Surely, Congress who used the term "good faith" in at least three (3) separate Code sections relating to a debtor's actions, if it had wanted to include "bad faith" as a grounds for dismissal of a Chapter 7 proceeding, it would have added such language. In essence, the Fund is arguing that Hyde's petition is in bad faith because the Code and relevant case law mandate that the Fund's lien be avoided. Hyde's actions in this proceeding are neither in bad faith nor do they lack good faith. Furthermore, even if either did, bad faith is not grounds for dismissal pursuant to 11 U.S.C., § 707.

Absent from the Fund's Memorandum is the decision of In re Victoria Limited Partnership, 187 B.R. 54 (Bankr. D. Mass 1995). In Victoria, Judge Queenan, in a lengthy, scholarly decision, determined that the "good faith" doctrine was "an amorphous gestalt, devoid of reasoning and impenetrable to understanding." The Court also looked to the Uniform Commercial Code to determine how it defined "good faith." The Uniform Commercial Code's

9

definition of "good faith" is "honesty in fact in the conduct or transaction concerned." In <u>Victoria</u>, the moving party requested the Court either dismiss the case, abstain from the case, or grant it relief from the automatic stay to continue with its foreclosure proceeding. The <u>Victoria</u> filing was made on the eve of the foreclosure sale. The movant had argued that the debtor was acting in bad faith and that bad faith was shown by the following:

    a)  multiple bankruptcy filings;

    b)  the filing occurred on the eve of the foreclosure;

    c)  the filing was an attempt in an effort to avoid the bank's state court judgment;

    d)  the filing was a tactic designed to resolve the two-party litigation;

    e)  the debtor had few unsecured creditors;

    f)  the debtor was guilty of improper bankruptcy conduct in not complying with the party's stipulation;

    g)  the mortgaged property was the debtor's single asset; and,

    h)  there was no possibility of reorganization.

The Court denied the motion to dismiss. The Court further stated that a remedy for dishonesty has a place in bankruptcy law, "[b]ut the good faith filing doctrine has nothing to do with dishonesty."

Debtor filed his petition for relief prior to the Fund receiving a judgment. This is the only bankruptcy that the

32

Debtor has ever filed.  The remedy that the Code provides for the Fund is that the Fund may seek, and has sought, is to have its debt determined to be nondischargeable.

The Fund states in its Memorandum, "[y]et debtor refused to pay a single penny to the Fund and embarked on a mission to frustrate the Fund's recovery efforts." (Fund's Memorandum, page 23).  **This allegation is blatantly false.**  There were numerous offers made to the Fund including an offer contained in a letter dated October 30, 2002 wherein Debtor offered to: (a) provide the Fund with $25,000.00 via cashiers check; and, (b) agree to an entry of judgment and execution in the amount of $292,000.00 (calculated at $318,000 less the $25,000 payment, there is a $1,000.00 mathematical error here) with an agreement that the execution would accrue interest at the rate of 5%.  Hyde further agreed that if the $292,000.00 plus interest was not paid within five (5) years that the Fund could proceed "to hold a sheriff sale and sell the property."  A true copy of said letter, dated October 30, 2002, without its attachment, is annexed hereto and marked Exhibit "A."

Thereafter, Hyde by letter dated December 5, 2002, specifically informed the Fund that unless a resolution would occur that the Fund would "in all likelihood force Mr. Hyde into bankruptcy sooner or later, where he could contest the Board's claims, take advantage of the homestead declaration, take advantage of bankruptcy exemptions and benefits, and proceed with the benefit of the Board not being a secured creditor."  A true

11

copy of said letter dated December 5, 2002 is annexed hereto and marked Exhibit " B."

### C.  DEBTOR HAS FILED A STATEMENT OF INTENTION

The Fund grudgingly admits that the Debtor did, in fact, timely file a statement of intention.  A copy of the Debtor's timely filed Statement of Intention is annexed hereto and marked Exhibit "C."  The Statement of Intention was filed on June 12, 2003 along with the Debtor's Schedules and Statement of Financial Affairs.  The Fund's argument appears to be that the filing is a non-filing due to the fact that the Statement of Intention does not comply with Burr v. Bank of Boston, 160 F.3d 843 (1st Cir. 1998).  To the extent that there is an issue with a statement of intention, pursuant to 11 U.S.C., § 707(a)(3), the only party that can raise an issue with respect to a statement of intention as a ground to seek a dismissal of a proceeding is the United States Trustee.  Although the Code does allow a court to dismiss a case if it determines a debtor failed to file a statement of intention, which the Debtor did file, the Code states that the Court may consider such issue, "but only on a motion by the United States trustee." (Emphasis added)  Furthermore, Debtor's states that the Statement of Intention, although signed by the Debtor, was drafted by counsel and neither of the two (2) institutional secured creditors have raised any issue with respect to the Statement of Intention.  The Third Circuit has recently joined four (4) other circuits, each of which has determined that 11 U.S.C., § 521, is only a notice requirement

12

and "does not limit a debtor's substantive retention options to the three stated therein." <u>Price v. Delaware State Police</u>, F.C.U. (<u>In re Price</u>), 370 F.3d 362 (3rd Cir. 2004). As such, of the nine (9) circuits that have considered this issue, five (5) circuits have held that it is not impermissible for the debtor to "retain and maintain." Even if this Court determines that the Debtor must amend his Statement of Intention, this Court should provide the Debtor with the opportunity to do so. If this Court determines that the Fund has standing to complain about the Statement of Intention, which the Debtor does not believe that the Fund has, Debtor states that dismissal would be far to great a penalty.

**D.    THE FUND'S MOTION IS NOT TIMELY FILED**

As noted by the Court in <u>Marsico</u>,[9] a delay in filing a motion to dismiss "might be unfair or unjust to a debtor, trustee, or other party in interest resulting in denial based upon latches." At 7. In the instant case, the Debtor filed for relief on May 28, 2003. The Debtor filed his MOTION TO AVOID the Fund's lien on January 29, 2004. The Fund has brought an adversary action against the Debtor objecting to the dischargeability of its debt and the Debtor's discharge. This Court has ruled on a motion for summary judgment relating thereto. The Debtor has expended a significant amount of time on the case as has Fund and as has the Chapter 7 Trustee. Other than filing necessary motions to receive the relief provided to

_____

[9]2004 W.L. 97647 (Bankr. D. NH 204)

the Debtor under the Code, the Debtor has taken no action, post petition, which would provide the Fund with the grounds to support a dismissal.  If the Fund believed that a meritorious motion could be filed seeking dismissal of the Debtor's proceeding, that motion should have been filed months ago.  As the Fund has actively participated in the case by attending the meeting of creditors, opposing the MOTION TO ESTABLISH VALUE, opposing the MOTION TO AVOID LIEN, bringing an adversary action, pursuant to 11 U.S.C., § 523 and 11 U.S.C., § 727, appealing this Court's order avoiding the Fund's lien, and as the Chapter 7 Trustee has expended a significant amount of time in the case, the Fund's Motion should be denied based upon latches.

**E.    DISMISSAL OF THE PETITION WOULD NOT FULFILL THE PURPOSE OF THE CODE BUT WOULD DISTORT THE PURPOSES OF THE CODE**

In essence, the Fund's argument is that because it holds a nondischargeable claim against the Debtor, the Debtor is not entitled to any relief under the Code and the Debtor is not entitled to retain his exempt assets.

To draw the Fund's argument to its logical conclusion, whenever there is a creditor that holds a nondischargeable debt, the debtor should not be entitled to any exemption, whatsoever. Clearly, the Fund either misreads the Code or desires that this Court take a position which is neither consistent with the Code or well settled case law.  Allowing the Fund the relief which it seeks would distort, the purposes of the Code, because it would effectively strip Mr. Hyde of his exemptions, and effectively allow the Fund to take steps necessary to initiate a sheriff sale

14

to sell the Debtor's and his son's residence and to evict Mr.
Hyde and his minor son.

### III.  PARAGRAPH BY PARAGRAPH RESPONSE

Hyde responds to the Motion on a paragraph by paragraph
basis as follows:

1.    Admit.

2.    Admit.

3.    In response to paragraph 3, to the extent that the Fund
quotes 11 U.S.C., § 707(a), Debtor would believe that the Fund
properly quoted this section.  As to the Fund's statement that
"cause" can include bad faith, the Debtor states that though
other courts have suggested that in various situations that
"cause" may include "bad faith" in an analysis performed pursuant
to 11 U.S.C., § 707(a), that there is no First Circuit case
holding same that, therefore, there is no binding precedent that
requires such a finding and, further, the Debtor has not
exhibited any bad faith in this proceeding.

4.    Debtor denies the allegation contained in paragraph 4
of the Motion and calls upon movant to prove same.

5.    As paragraph 5 is not a short and plain statement of
fact but rather is a request for relief, no response is required.

6.    Admit.

7.    Debtor admits that a separate Memorandum has been
filed.

8.    In response to paragraph 8, the Motion, itself, does
not refer to any exhibits.  To the extent that the Fund is

referring to exhibits in its Memorandum, Debtor would believe that the Fund has properly attached or referenced the exhibits to which it refers.

WHEREFORE, Debtor respectfully requests that the MOTION TO DISMISS be denied and that Hyde be awarded his attorney's fee and costs in opposing the Motion.

Respectfully submitted,

PHILLIP W. HYDE
By his attorney,

Richard L. Blumenthal, Esq.
BBO #047150
SILVERMAN & KUDISCH, P.C.
1320 Centre Street, Suite 203
Newton Center, MA  02459
617-527-1150

Dated: August 30, 2004

bkcy\hyde\dismiss.rsp

16



## MENDILLO & ROSS, LLP
Attorneys at Law
One Liberty Square
Boston, Massachusetts 02109

Robert M. Mendillo
Abbe L. Ross

(617) 338-9050
(617) 338-5959 (facsimile)
e-mail: rmm@mendilloross.com
alr@mendilloross.com

October 30, 2002

**VIA FACSIMILE**
312-580-7175

Beth A. Clukey, Esquire                    **FOR SETTLEMENT**
Jacobs, Burns, Orlove, Stanton & Hernandez    **PURPOSES ONLY**
122 South Michigan Avenue, Suite 1720
Chicago, IL 60603-6145

    Re:    Board of Trustees of Public School Teachers' Pension
           <u>and Retirement Fund of Chicago v. Phillip Hyde</u>
           Civil Action No. 02-10926-JLT

Dear Beth:

    As we discussed yesterday, I am writing to follow-up on the discussion I had with Terry Coles on Monday after our appearance before Judge Tauro.

    Terry indicated that a cash payment of $300,000 might resolve this matter. Believe me, if Mr. Hyde had that money, or had access to such money, he would pay it. Unfortunately, he does not.

    Mr. Hyde would, nonetheless, like to reach a settlement now. Mr. Hyde's only source of money is his Citizen's Bank $150,000 credit line secured by his house. He has drawn down approximately $60,000. He plans to use the remaining $90,000 for living expenses for himself and his 14-year-old son. Ahead of the Citizen's line of credit is a first mortgage with Sun Trust for $162,000. The fair market value of the house is approximately $550,000.

    Under these circumstances, allow me to make the following settlement offer which is really the best that we can do:

    1.    Upon execution of settlement papers, Mr. Hyde will provide the Pension Fund with a cashier's check for $25,000.

    2.    Mr. Hyde will assent to entry of a judgment and execution for $292,000, which represents the $318,000 attachment amount minus the $25,000 payment.

    3.    Mr. Hyde will execute a release of all claims against the Pension Fund and waive all rights to appeal.

39

Beth A. Clukey, Esquire
October 30, 2002
Page 2

4.     The execution will accrue interest at the rate of 5% per year.

5.     The execution will become due and payable five years after it is issued.

6.     If the $292,000 plus interest is not paid within five years after issuance of the execution, then the Pension Fund can proceed to hold a sheriff's sale and sell the property. If that is necessary, it is safe to assume that the value of the property will increase, probably to as much as $750,000. So, the Pension Fund will be well secured.

In considering whether to accept this offer, either now or during mediation, allow me to bring the following points to your attention:

1.     Mr. Hyde has a genetic history of depression. Both his parents were clinically depressed. He has been seeing psychiatrists and receiving anti-anxiety and anti-depression medication since 1982. I have requested a letter from his psychiatrist to confirm this, and I expect to forward a copy to you next week. But for the history of family depression and the depression that Mr. Hyde has suffered since 1982 when his mother died, I do not think that he would be where he is now.

2.     Due to his severe depression, Mr. Hyde has not worked since 1995. He is 60 years old. As a practical matter, it is unlikely that he will earn substantial money in the coming years.

3.     Mr. Hyde is a single parent. His wife died in 1999 after a lengthy and painful struggle with breast cancer. Mr. Hyde is solely responsible for raising his 14-year-old son, who is a freshman in high school.

4.     Mr. Hyde has no assets to speak of other than his home, and he is using his Citizen's line for living expenses. I have relayed to him Magistrate Bowler's suggestion that he apply for disability with the Social Security Administration, but even if he obtains disability payments, they are not likely to make a material difference in his income.

All in all, while the Pension Fund may not think highly of Mr. Hyde, there are extenuating and mitigating circumstances which could very well justify its decision to accept this proposal.

In addition, there are legal considerations that could support your client's decision to accept this proposal.

1.     As you know, Mr. Hyde has a homestead on his property. The homestead filing, and the mortgage and credit line, are all ahead of the writ of attachment. By virtue of the homestead exemption, as long as he makes his mortgage and equity line payments, it is unlikely that the Pension Fund could force a sale of the property until after Mr. Hyde dies.

2.     There may be a triable issue as to whether Mr. Hyde had the requisite intent to defraud the Pension Fund. As part of its case, the Pension Fund will have to show, by clear and convincing evidence, that Mr. Hyde was capable of entertaining an intention to deceive and injure the Pension Fund,

Beth A. Clukey, Esquire
October 30, 2002
Page 3

that he did entertain an intention to deceive and injure the Pension Fund, and the he acted upon that intention to deceive and injure. See McGuire v. Almy, 292 Mass. 323, 327 (1937). Given the history of mental illness that Mr. Hyde has suffered since the time his mother died, this could be a jury question.

3.    As I mentioned, I plan to serve interrogatories regarding a possible statute of limitations defense. Mrs. Hyde passed away in 1982. The Pension Fund maintains that it did not learn of her death until 2000. It seems to me that Mr. Hyde has a chance of proving that the Pension Fund knew, or should have known, of his mother's death well before the year 2000.

4.    I have advised Mr. Hyde to see a bankruptcy attorney to discuss the possibility of filing for bankruptcy. Although a debt or judgment rooted in fraud is generally not dischargeable, Mr. Hyde may be able to defend against the non-dischargeability of any debt that he owes the Pension Fund. In the Bankruptcy Court, as well as in the District Court, the Pension Fund would have to show an intent to deceive by clear and convincing evidence. There is authority for the proposition that a bankrupt's debt can be discharged if the creditor cannot prove that there was an intent to deceive the creditor. See In Re Smith, 119 B.R. 714 (Bankruptcy D.N.D. 1990) (debtor's debt discharged dispute claim of fraud because creditor did not prove intent to deceive by clear and convincing evidence).

In sum, Mr. Hyde's financial position is not good, and he has some legal moves he can pursue to avoid a judgment. His defenses are not "far fetched," although we recognize that it may be difficult to prevail. Nonetheless, unless the Pension Fund accepts a settlement, Mr. Hyde would have no choice other than to file bankruptcy, or defend this case on lack of intent and statute of limitations grounds, and then in any event file bankruptcy if a judgment is obtained.

We realize that one option would be for Mr. Hyde to sell his house immediately. That would result in his paying off his mortgages and turning over all remaining money to the Pension Fund – but having no money, no collateral to borrow money, and no place to live. Given his responsibility for his son and his mental health, that is something that he is not willing to do, and it is something that I would not advise him to do.

I certainly hope that we can reach a settlement along the lines outlined above. It is regrettable what occurred, but there are mitigating circumstances. Mr. Hyde is not public enemy number one. He wants to do the right thing as much as possible and as long as it does not leave him and his son homeless and destitute. I ask the Pension Fund to show some mercy for Mrs. Hyde's sick son and innocent grandson.

As I mentioned, if you want to take an assets deposition of Mr. Hyde before deciding whether to settle, that is something we would be willing to do. This will confirm that I do not anticipate taking any depositions.

I have also enclosed a copy of Mr. Hyde's resume.

Finally, I did not receive Exhibits A and B to Mr. Nehf's affidavit, which you sent to me last week. Please have your office send me copies of the exhibits.

Beth A. Clukey, Esquire
October 30, 2002
Page 4


      Thank you.

                              Very truly yours,

                              Robert M. Mendillo


RMM/pw
Enclosure
cc:    Terrence E. Coles, Esquire (w/facsimile; w/enclosure)
       Phillip Hyde

42



EXHIBIT

B

MENDILLO & ROSS, LLP

Attorneys at Law
One Liberty Square
Boston, Massachusetts 02109

Robert M. Mendillo
Abbe L. Ross

(617) 338-9050
(617) 338-5959 (facsimile)
e-mail: rmm@mendilloross.com
      alr@mendilloross.com

December 5, 2002

**VIA FACSIMILE**
312-580-7175

Beth A. Clukey, Esquire
Jacobs, Burns, Orlove, Stanton & Hernandez
122 South Michigan Avenue, Suite 1720
Chicago, IL 60603-6145

Re:    Board of Trustees of Public School Teachers' Pension
       and Retirement Fund of Chicago v. Phillip Hyde
       Civil Action No. 02-10926-JLT

Dear Beth:

Following up on our telephone conversation yesterday, I have decided to advise Mr. Hyde to assert his Fifth Amendment rights at any deposition. I have an appointment to meet with the Assistant United States Attorney who is supervising the criminal investigation. The appointment is Wednesday the 11th at 10:00 a.m.

Concerning settlement, I am both disappointed and bewildered by the Board's position, which I understand to be that it wants to "pursue the judicial process" to obtain a judgment. Mr. Hyde's settlement proposal, which could be closed this month, would give the Board $25,000 in cash immediately, a judgment for $317,678.16, a mortgage on his house to secure the payment of that judgment – with interest – no later than December 31, 2007, and a subordination of his homestead declaration to the mortgage. The package would end the case and guarantee payment of the judgment amount with interest.

If the Board pursues the judicial process, it will in all likelihood force Mr. Hyde into bankruptcy sooner or later, where he could contest the Board's claims, take advantage of his homestead declaration, take advantage of bankruptcy exemptions and benefits, and proceed with the benefit of the Board not being a secured creditor. This does not make sense. The Board cannot get blood out of a stone and Mr. Hyde's proposal is better than anything that the Board could get through pursuing the judicial process,

43

Beth A. Clukey, Esquire
December 5, 2002
Page Two

and this is what we will tell Judge Skinner at the January 21st mediation. I urge the Board to settle this now.

Very truly yours,

Robert M. Mendillo

RMM/pw
cc: Phillip Hyde



EXHIBIT

UNITED STATES BANKRUPTCY COURT FOR THE
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

In re                                          Case No.: **03-14530-JNF**
**PHILLIP W. HYDE**
Debtor                                         **Debtor Statement of Intention**
Social Security No.: **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**

                                               Chapter **7**


1.    I, the debtor, have filed a schedule of assets and liabilities
      which includes consumer debts secured by property of the estate.

2.    My intention with respect to the property of the estate which
      secures those consumer debts is as follows:

      a.    PROPERTY TO BE SURRENDERED

            No property to be surrendered.

      b.    PROPERTY TO BE RETAINED

            Property Description
                 (Creditor Name)                     Method of Retention

            **RESIDENCE**                             **RETAIN**
                 **(CITIZENS BANK)**

            **RESIDENCE**                             **RETAIN**
                 **(SUNTRUST MORTGAGE, INC)**

3.    I understand that section 521(2)(B) of the Bankruptcy Code requires
      that I perform the above-stated intentions within 45 days of the
      filing of this statement with the court, or within such additional
      time as the court, for cause, within such 45-day period fixes.

      Date: _____6/1/0_____              _____
                                         Signature of debtor

45

I hereby certify that a true copy of the
above document was served upon the
attor    of record for each other party
by _____ hand on _12/1/0~_